AO 106 (Rev. 04/10) Application for a Search
Warrant



AUSA Patrick Mott, (312) 554-9113
AUSA Chester Choi, (312) 697-4037

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

In the Matter of the Search of:

The premises of the Storage Unit #176 located at
Life Storage, 5746 W. Roosevelt, Chicago, Illinois
60804, further described in Attachment A-1

Case No.  23 M 661

Ref. No. 22 GJ 637

## APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Brent Harris, a Special Agent of the Homeland Security Investigations, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

### See Attachment A-1

located in the Northern District of Illinois, there is now concealed:

### See Attachment B-1

The basis for the search under Fed. R. Crim. P. 41(c) is evidence, instrumentalities, and contraband.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841 and 846 | narcotics |

The application is based on these facts:

### See Attached Affidavit,

Continued on the attached sheet.

_Brent Harris_
_____
*Applicant's Signature*

BRENT HARRIS, Special Agent
Homeland Security Investigations
*Printed name and title*

Pursuant to Fed. R. Crim. P. 4.1, this Application is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the statements in the Application and Affidavit by telephone.

Date: June 28, 2023          8:47 p.m.

_Heather K. McShain_
_____
*Judge's signature*

City and State: Chicago, Illinois

HEATHER K. MCSHAIN, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT    )
                                )
NORTHERN DISTRICT OF ILLINOIS   )

## AFFIDAVIT

I, Brent Harris, being duly sworn, state as follows:

1.      I am a Special Agent with the Department of Homeland Security –
Immigration and Customs Enforcement – Homeland Security Investigations (HSI)[1]
and have been so employed since 2020. I am currently assigned to the Gangs and
Violent Crimes Task Force (GVCTF).  As part of my duties as an HSI Special Agent,
I investigate criminal violations relating to narcotics trafficking offenses, including
criminal violations of the federal controlled substance laws, including, but not limited
to, Title 21, United States Code, Sections 841, 843, and 846.  I am cross-designated
and have the authority to conduct Title 21 investigations and enforcement activities.
I have been involved with investigations of Title 21 offenses and am familiar with the
Interagency Cooperation Agreement between the U.S. Drug Enforcement
Administration ("DEA") and HSI.

2.      During the course of my law enforcement experience, I have participated
in numerous investigations involving controlled substances. I have conducted
investigations of a variety of illegal drug-trafficking and money-laundering
organizations. I have participated in investigations that led to the seizure of illegal

---

[1] A Homeland Security Investigations Special Agent is a qualified law enforcement officer under 18
U.S.C. § 2510(7).

1

drugs, weapons, and assets derived from the sale of illegal drugs, and the subsequent felony arrests of those individuals involved. I have participated in investigations involving Title III authorized wiretaps. I have also participated in numerous drug-related training courses throughout my law enforcement career. I am familiar with and have used common and normal methods of investigation, including, but not limited to, visual and electronic surveillance, debriefing and questioning of witnesses, informants, defendants and others who have knowledge of the distribution of controlled substances, the use of search and arrest warrants, the use of informants, the use of pen registers, the utilization of confidential sources and undercover agents, and the use of court-authorized wire intercepts.

3.    I have received training in the area of narcotics investigations, money laundering, financial investigations and various methods which drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of narcotics laws.

4.    I have participated in investigations that have led to the issuance of search warrants involving violations of narcotic laws. These warrants involved the search of locations including: residences of targets, their associates and relatives, "stash houses" (houses used as drug/money storage locations), storage facilities, bank safe deposit boxes, cellular phones, and computers. Evidence searched for and recovered in these locations has included controlled substances, records pertaining to

the expenditures and profits realized therefrom, monetary instruments and various assets that were purchased with the proceeds of the drug trafficking. I have participated in the execution of multiple federal search warrants.

5.     This affidavit is made in support of an application for a warrant to search the premises are described more fully in Attachments A-1 and A-2:

       a.     The Storage Unit #176 (**Subject Premise A**) located at Life Storage at 5746 W. Roosevelt, Chicago, IL 60804, including containers and vehicles therein, described further in Attachment A-1, for evidence, instrumentalities, and contraband described further in Attachment B-1, concerning firearms offenses, in violation of Title 18, United States Code, Section 922(g)(1) and narcotics offenses, in violation of Title 21, United States Code, Sections 841 and 846 (**Subject Offenses**).

       b.     The Storage Unit #126 (**Subject Premise B**) located at Life Storage at 5746 W. Roosevelt, Chicago, IL 60804, including containers and vehicles therein, described further in Attachment A-2, for evidence, instrumentalities, and contraband described further in Attachment B-2, concerning narcotics offenses, in violation of Title 21, United States Code, Sections 841 and 846 (**Subject Offenses**).

6.     The statements in this affidavit are based on my personal knowledge and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts

3

that I believe are sufficient to establish probable cause to believe that evidence, instrumentalities, and contraband of violations of Title 18, United States Code, Section 922(g)(1) and narcotics offenses, in violation of Title 21, United States Code, Sections 841 and 846, are located in **Subject Premises A** and **Subject Premises B** (collectively, the "**Subject Premises**").

7.     Through training, experience, and discussions with other experienced agents, I know that drug traffickers:

a.     Drug traffickers commonly maintain books, papers, files, and other records which reflect the names, addresses and/or telephone numbers of their customers and other associates in the money laundering trade.

b.     Drug traffickers maintain books, records, receipts, notes, ledgers, transportation and travel records, money orders, and other files relating to the laundering of illegally derived proceeds on behalf of their customers. The aforementioned records are often maintained where money launderers have ready access to them, such as on their cell phones and other electronic devices, and in their residences and/or place of businesses.

c.     Drug traffickers conceal in their residences and/or other secure locations, such as storage units, the proceeds of their illegal activity and the proceeds that they intend to launder on behalf of their customers, including large amounts of United States currency, financial instruments, precious metals, jewelry, rare coins,

works of art, and other items of value, as well as books and records regarding the acquisition, use, and disposition of such items of value.

   d. Drug traffickers attempt to legitimize the illegally derived proceeds of their customers, often accomplishing this goal by using the services of banks, other financial institutions, and real estate brokers. Moreover, money launderers often place assets, including real and personal property in names other than their own to avoid the detection and forfeiture of such assets by government agencies.

   e. It is common for drug traffickers to maintain the aforementioned records in secure places within their residences and/or places of business, including on electronic devices located in their residences and/or places of business, so that the money launderers have ready access to such information.

   g. Drug traffickers frequently possess firearms and ammunition to protect their illegal proceeds and illegal proceeds of their customers.

   h. Drug traffickers frequently possess multiple cellular phones to conduct their illicit activity.

## I. BACKGROUND

   8. Homeland Security Investigations ("HSI"), and the Chicago Police Department ("CPD") are investigating narcotics trafficking by members of a drug trafficking organization (the "SANDERS DTO") that operates an open-air drug market near the intersection on the 3400 block of West Chicago Avenue and the 800 block of North Trumbull Avenue on the west side of Chicago ("the Chicago and

5

Trumbull drug spot" or "the drug spot"). The Chicago and Trumbull drug spot is managed by TERRANCE SANDERS (also known as "Rocklord," "Rock," and "Lord"), SHAVELLE SIMS (also known as "Four," "Shavez," and "Shavelle"), TYRON PAULK (also known as "Lil T," "Boogie," "Boobie," and "Buddy"), BRIAN WILLIAMS (also known as "Lil Bri" and "Lil Brian"), and DELAWRENCE ISON (also known as "Binny" and "Q"), while DEMECCO TARTT (also known as "Mecco"), SAMUEL LOPEZ (also known as "Tall Four"), DEANDRE MADDOX (also known as "Dre" and "Dread"), TARANCE BANKS (also known as "Ugg"), LAVELL GRIFFIN (also known as "Vell"), RAHEEM SMITH (also known as "Skeem" and "Gotti"), and others sell the SANDERS DTO's narcotics to customers at the drug spot. PARTAGNAN BURCH was identified as the SANDERS DTO's supplier of crack cocaine.

9. On or about June 26, 2023, the government submitted an affidavit in support of a criminal complaint alleging that: (1) beginning no later than in or about May 2022, and continuing through June 2023, SANDERS, SIMS, PAULK, LOPEZ, TARTT, BANKS, MADDOX, ISON, GRIFFIN, WILLIAMS, and SMITH conspired to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, 400 grams or more of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide), a Schedule II Controlled Substance, one kilogram or more of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, and a quantity of a mixture and substance containing a

detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1), in violation of Title 21, United States Code, Section 846; (2) on or about March 9, 2023, PAULK did knowingly possess a firearm, namely, a loaded Glock 43x 9mm pistol bearing serial number BWCB012, with an extended magazine, and a loaded Ruger LCP II 9mm pistol bearing serial number 380800857, in furtherance of a drug trafficking crime for which defendant may be prosecuted in a Court of the United States, namely, conspiracy to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, as charged in Count One of this Complaint, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); (3) on or about April 1, 2023, BURCH did knowingly possess with intent to distribute a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1); (4) on or about June 4, 2023, SANDERS did knowingly use, carry, and discharge a firearm in furtherance of a drug trafficking crime for which he may be prosecuted in a court of the United States, namely, conspiracy to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, as charged in Count One of this Complaint, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii); (5) on or about June 5, 2023, SANDERS did knowingly possess a firearm, namely, a model FN 509 9 millimeter pistol, bearing serial number GKS0224379, in furtherance of a drug trafficking crime for which defendant may be

prosecuted in a Court of the United States, namely, conspiracy to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, as charged in Count One of this Complaint, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); (6) on or about June 6, 2023, SMITH did knowingly possess a firearm, namely, a loaded model FN 509 9 millimeter pistol, bearing serial number GKS0224379, in furtherance of a drug trafficking crime for which defendant may be prosecuted in a Court of the United States, namely, conspiracy to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, as charged in Count One of this Complaint, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i); and (7) on or about June 16, 2023, HILL did knowingly possess with intent to distribute a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of heroin, a Schedule I Controlled Substance, and a quantity of a mixture and substance containing a detectable amount of fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide), a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) ("June 26, 2023 Affidavit"). That same day, Magistrate Judge Heather K. McShain signed the criminal complaint and authorized arrest warrants for the 13 defendants in the criminal complaints. The June 26, 2023 Affidavit is attached as Exhibit 1 and incorporated by reference.

10. As set forth in the June 26, 2023 Affidavit, based on the wiretap investigation conducted by law enforcement, beginning no later than in or about May

8

2022, and continuing until the present, members of the Traveling Vice Lords street gang (TVLs), led by TERRANCE SANDERS, have operated a narcotics distribution organization (the SANDERS DTO) that operated the Chicago and Trumbull drug spot. SANDERS and others used a grey GMC van and a red Audi hatchback as temporary stash locations to store narcotics for resale prior to distributing them on to various street-level narcotics sellers ("pack workers") at the Chicago and Trumbull drug spot. The two vehicles were continuously parked in the lot behind a located on the 3300 West Chicago Avenue ("the Cell Phone Store"). Additionally, SANDERS and others used SANDERS's former residence located at 1637 North Karlov Avenue as a stash house where they mixed, cut, prepared and packaged narcotics for delivery to the drug spot. When the drug spot needed to be resupplied, SANDERS and others delivered the narcotics from SANDERS's residence at 1637 North Karlov Avenue to the GMC van and the red Audi and others would then deliver the narcotics to the drug spot and/or stash locations located closer to the drug spot, where they were then sold in user or dealer quantities by pack workers managed by SIMS to customers of the SANDERS DTO. After the narcotics sales, portions of the narcotics proceeds were turned over to SANDERS. SIMS and others delivered narcotics to the drug spot. SIMS also supervised the collection of narcotics proceeds from the Chicago and Trumbull drug spot, met with SANDERS and narcotics suppliers, and resupplied the Chicago and Trumbull drug spot.

## II. FACTS SUPPORTING PROBABLE CAUSE TO SEARCH SUBJECT PREMISES A & B

### A. SANDERS Utilizes Storage Units at a Life Storage Facility to Keep Vehicles and Other Items.

11.     On or about February 11, 2023, at approximately 10:19 a.m. (call session # 612), SIMS received an incoming call on the telephone number (773) 302-6553 ("Target Phone 1")[2] from SANDERS, who was using (872) 305-0940 ("Target Phone 4").[3] During the conversation, SANDERS stated, "…you take me to the storage [unit]

---

[2] Law enforcement identified SIMS as the user of Target Phone 1 based on the following: or about December 19, 2022, at approximately 11:23 a.m., using a POD camera, a LEO observed SIMS standing near the intersection on West Chicago Avenue and North Trumbull Avenue. At that time, the LEO monitoring the POD camera placed an outgoing call to Target Phone 1 and observed as SIMS appeared to retrieve a cell phone from the right-side pocket of his jacket and speak into the cell phone. During the conversation, according to the LEO, SIMS answered, "Hello." The LEO then disconnected the call and observed SIMS lower the phone from his face.

Law enforcement has further identified SIMS as the user of Target Phone 1 based on the following: On or about January 11, 2023, at approximately 10:20 a.m. (call session # 316), SIMS received an incoming call on Target Phone 1 from Individual D, who was using telephone number (773) 895-9472. During the conversation, Individual D asked, "[W]here you at? In the car [the red Audi hatchback parked in the rear lot behind the Cell Phone Store]?" SIMS replied, "I'm right here. . . Turning the corner." At about the same time of the phone call described above, using a pole camera, LEOs observed a black Volkswagen sedan arrive and park in the parking lot behind the Cell Phone Store. Moments later, LEOs observed SIMS exit the driver's seat of the Volkswagen and enter the passenger seat of the red Audi hatchback. Shortly after, SIMS exited the red Audi and returned to the driver's seat of the black Volkswagen and departed the parking lot. About two minute later, at approximately 10:22 a.m., using a pole camera, LEOs observed the black Volkswagen arrive near the Chicago and Trumbull drug spot. At that time, Individual D approached the driver's side of the Volkswagen on foot and SIMS handed Individual D an unknown object. Individual D then walked out of camera view.

[3] Law enforcement identified SANDERS as the user of Target Phone 4 based on the following: Law enforcement identified SANDERS as the user of Target Phone 4 based on the following: On or about December 4, 2022, at approximately 12:54 p.m., using a City of Chicago Police Observation Device ("POD") camera, law enforcement observed SANDERS standing near the intersection on West Chicago Avenue and North Trumbull Avenue. At that time, a law enforcement officer ("LEO") placed an outgoing call to Target Phone 4 and observed as SANDERS appeared to look at the screen of a cell phone in his possession. SANDERS appeared to manipulate the cell phone screen with his finger and the call was disconnected. LEOs then observed SANDERS place the cell phone in the left-side pocket of his jacket. Moments later, the LEO placed a second outgoing call to Target Phone 4 and observed on POD camera as SANDERS retrieved a cellphone from the left-side pocket of his jacket and manipulate the cell phone screen with his finger. The LEO observed that the call was once again disconnected. In addition, as discussed below, on or about February 10, 2023, SANDERS used Target

10

real quick."[4] SIMS asked, "Where you at?" SANDERS replied, "Uh finna come that way [to the drug spot]." Based on the conversation described above, my knowledge of the investigation and my training and experience, I believe SANDERS instructed SIMS to drive him to a storage unit.

12.     At approximately 10:28 a.m., using a POD camera, LEOs observed SANDERS exit the front passenger seat of a black Range Rover that was parked near the Chicago and Trumbull drug spot. SANDERS approached a black Volkswagen sedan used by SIMS ("Subject Vehicle 2") that was parked on the 800 block of North Trumbull Avenue and entered the front passenger seat of the vehicle. Moments later, LEOs observed Subject Vehicle 2 depart the area. LEOs on surveillance followed Subject Vehicle 2 until at approximately 10:35 a.m., LEOs observed the vehicle arrive and park on the 3500 block of West Flournoy Street. About three minutes later, at approximately 10:38 a.m., an unidentified male entered the rear passenger seat of

---

Phone 4 to arrange to meet with PAULK to resupply a van on or about February 10, 2023, at approximately 7:27 a.m. At approximately 7:33 a.m., about six minutes after SANDERS said he was "pulling up" to meet PAULK by the van, LEOs using a pole camera observed SANDERS meet with PAULK in the rear lot of the Cell Phone Store and then observed SANDERS briefly enter the gray van parked in the lot.

[4] To the extent that recorded communications (including text messages) are summarized in this Affidavit, those summaries do not include references to all of the topics covered during the course of the conversation that was recorded. In addition, the summaries do not include references to all statements made by the speakers on the topics that are described. All quotations from recorded conversations are based upon preliminary transcriptions of those conversations and/or from your affiant or other law enforcement having personally listened to the recordings. The times listed for the recorded conversations are approximate. At various points in the Affidavit, I included in brackets my interpretation of words and phrases used in the recorded conversations. My interpretations are based on the contents and context of the recorded conversation, my knowledge of the investigation, my experience and training, and the experience and training of other law enforcement in this investigation.

Subject Vehicle 2. At that time, law enforcement surveillance observed Subject Vehicle 2 depart the area and continued to follow the vehicle. LEOs on surveillance followed Subject Vehicle 2 until it arrived and entered the front entrance of the Life Storage facility located at 5746 West Roosevelt Road in Chicago. LEOs continued to observe as Subject Vehicle 2 as it drove through the aisle marked "C." Moments later, LEOs observed SANDERS driving a gray Dodge Durango with a red-colored hood, exit the gate of the storage facility. Based on the intercepted call and surveillance described above, my knowledge of the investigation and my training and experience, I believe SANDERS instructed SIMS to pick up SANDERS from the Chicago and Trumbull drug spot and drive him to the Life Storage facility where SANDERS' gray Dodge Durango with a red-colored hood was stored. Further, I believe SANDERS stores vehicles and other unknown items in the storage facility.

**B.      SANDERS Utilizes Individual A as a Nominee to Conceal his Use of the Subject Premises.**

13.      On or about March 1, 2023, an HSI agent served a grand jury subpoena to Life Storage seeking information about the identities of individuals who accessed the facility at the approximate time that LEOs observed Subject Vehicle 2 enter the facility on or about February 11, 2023. When accepting service of the subpoena, a Life Storage employee informed the HSI agent that each storage unit was assigned a unique access code that the lessee for that unit could use to enter the Life Storage facility. Life Storage records, however, would not show which unit the lessee actually accessed upon entry to the facility. Based on a tenant list provided by Life Storage,

law enforcement identified Individual A as the lessee of four storage units, including the **Subject Premises**. Individual A provided the phone number (773) 791-8014 as the contact number on the rental agreements for those four units. Based on customer access logs provided by Life Storage, at approximately the same time law enforcement officers saw Subject Vehicle 2 enter the Life Storage facility on or about February 11, 2023, a unique access code with Unit 109, one of the four units leased by Individual A, was entered in order to gain entry into the Life Storage facility.

14.     Based on a toll analysis of 872-600-4668 ("Target Phone 5"), used by SANDERS,[5] between on or about March 10, 2023, to April 26, 2023, with the last call occurring on or about April 12, 2023, there were a total of approximately 39 calls between Target Phone 5, and telephone number (773) 791-8014, the number associated with Individual A.

15.     Based on the intercepted call referenced above, law enforcement's surveillance of SIMS and SANDERS entering the Life Storage facility on or about February 11, 2023 while driving Subject Vehicle 2, the Life Storage customer access logs showing that a unique access code associated with one of Individual A's four units

---

[5] Law enforcement identified SANDERS as the user of Target Phone 5 based on the following: On or about September 12, 2022, at approximately 10:08 a.m., using a POD camera, LEOs observed SHAVELLE SIMS standing on the northwest corner of the intersection on West Chicago Avenue and North Trumbull Avenue. At that time, a LEO placed an outgoing call to Target Phone 5 and observed on POD camera as SIMS appeared to look at the screen of a cell phone in his possession and place the cell phone to his ear. The LEO and SIMS had the following conversation that is not verbatim: the LEO asked for "Mike," SIMS asked who the LEO was looking for. The LEO repeated "Mike," at which point SIMS stated that it was not "Mike." The LEO replied that it was the wrong number. After, the phone call ended LEOs observed on POD camera as SIMS lowered the cell phone from his ear and placed it in the back side pocket of his pants.

was entered at the same time SIMS and SANDERS entered the Life Storage, law enforcement surveillance showing that SANDERS exited the Life Storage facility driving a gray Dodge Durango with a red hood that he was not driving upon entering the facility, I believe that SANDERS was storing the Dodge Durango in one of the units leased by Individual A and that SANDERS uses Individual A as a nominee to conceal his use of the **Subject Premises**.

### C. On or about June 28, 2023, Individual A Provided Law Enforcement Verbal Consent to Search Subject Premises A

16.     On or about June 28, 2023, law enforcement executed or attempted to execute arrest warrants on the 13 defendants, including SANDERS, named in the criminal complaint. That same day, law enforcement set up surveillance on the Life Storage. At approximately 9:48 a.m., law enforcement observed Individual A drive into the Life Storage. Soon after, law enforcement approached Individual A and asked him/her about storage units Individual A rented at Life Storage. Individual A told law enforcement that h/she rented four units, including **Subject Premises A** and **Subject Premises B**, but stated that h/she allowed somebody else to use **Subject Premises A** and **Subject Premises B**. When asked for the identity of that person, Individual A claimed Individual A only knew the person by the street name of "Big Head." Individual A provided law enforcement officers verbal consent to search three units, including **Subject Premises A**. As discussed below, Individual A indicated s/he did not have a key to **Subject Premises B**.

14

17.     Inside of **Subject Premises A**, law enforcement found a green Chevrolet Caprice, with license plate BQ71743, which, according to law enforcement databases, is registered to SANDERS, and other furniture, including a dresser. Individual A provided verbal consent for Customs and Border Protection (CBP) narcotics canines Raptor[6] and Clifford[7] to conduct a sniff in **Subject Premise A**.[8] Raptor alerted to the presence of narcotics on a dresser by showing a change of behavior. Clifford alerted to the presence of firearms near the trunk of the green Chevrolet Caprice by showing a change of behavior. In plain view, there were two boxes of ammunition on the floor near the garage door.

18.     When law enforcement asked Individual A about accessing **Subject Premises B**, Individual A stated s/he did not have the key to **Subject Premises B** and stated that s/he believed that "Big Head" kept a vehicle believed to be an Oldsmobile Cutlass in **Subject Premises B**. Law enforcement also conducted a free air dog sniff on the exterior door of Subject Premises B. CBP canine Raptor alerted to

---

[6] CBP canine Raptor received training at the U.S. Customs and Border Protection Training Center in El Paso, Texas. Raptor is able to detect the presence of narcotics. Raptor's last certification was on September 13, 2023.

[7] CBP canine Clifford received training at the U.S. Customs and Border Protection Training Center at Front Royal, Virginia. Clifford is able to detect currency and firearms. Clifford's last certification was on September 12, 2023.

[8] During the execution of a search warrant at the Cell Phone Store on or about June 28, 2023 (23 M 649), law enforcement found the title to the green Chevrolet Caprice, which indicated the title was held in the name of SANDERS. During the search of the Cell Phone Store, law enforcement also recovered inside of a safe four firearms, jewelry (including a diamond-style necklace bearing the name "Rocklord" [SANDERS], and several stacks of suspected United States currency of an undetermined quantity.

the presence of narcotics on the closed door of **Subject Premise B** by showing a change of behavior.

19. According to Cook County Circuit Court records, Individual A has previously been convicted of Second-Degree Murder and received a sentence of 15 years' imprisonment.

20. According to Cook County Circuit Court records, SANDERS has four previous felony convictions, including a conviction for criminal drug conspiracy for which he received a sentence of 24 years' imprisonment.

21. Based on SANDERS leadership role in the SANDERS DTO, his use of a nominee to conceal his use of **the Subject Premises**, the presence of ammunition on the floor of **Subject Premises A**, and canine sniffs alerting to the presence narcotics and firearms within **Subject Premises A** and narcotics on the exterior of the door of **Subject Premises B**, I believe evidence, instrumentalities, and contraband of the Subject Offenses will be found in **the Subject Premises**.

## III.   CONCLUSION

22. Based on the above information, I respectfully submit that there is probable cause to believe that narcotics offenses, in violation of Title 21, United States Code, Section 841 and 846 and firearm offenses, in violation of Title 18, United States Code, Section 922(g), have been committed, and that evidence, instrumentalities, and contraband relating to the Subject Offenses, as further described in Attachment B-1 and B-2, will be found in **Subject Premise A** and **Subject Premise B**, as further described in Attachment A-1 and Attachment A-2. I therefore respectfully request

16

that this Court issue a search warrant for storage units 126 and 176 in the Life Storage facility located at 5746 W. Roosevelt Road, Chicago, IL 60804, more particularly described in Attachments A-1 and A-2, authorizing the seizure of the items described in Attachment B-1 and B-2.

FURTHER AFFIANT SAYETH NOT.

*Brent Harris*

Brent Harris
Special Agent
Homeland Security Investigations

Sworn to and affirmed by telephone
on June 28, 2023

*Heather K. McShain*                    8:47 p.m.

Honorable Heather K. McShain
United States Magistrate Judge

17

## **ATTACHMENT A-1**

## **DESCRIPTION OF PREMISES TO BE SEARCHED**

The premises to be searched is storage unit 176 located at Life Storage, 5746 W. Roosevelt Road Chicago, Illinois 60804. The front of the unit contains a green metal door that raises and lowers vertically. The number "176" is displayed above the door.



**ATTACHMENT B-1**

**LIST OF ITEMS TO BE SEIZED**

Evidence, fruits and contraband concerning violation of Title 21, United States Code, Sections 841 and 846, and Title 18, United States Code, Section 922(g)(1), as follows:

1.     Narcotics.

2.     Paraphernalia for packaging, processing, diluting, weighing, and distributing controlled substances, such as scales, funnels, sifters, grinders, glass panes and mirrors, razor blades, plastic bags, and heat-sealing devices.

3.     Paraphernalia for packaging cash drug proceeds including heat sealing devices, plastic packaging for cash, rubber bands, and money-counting devices.

4.     Personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to distribution of controlled substances.

5.     Cash, currency, financial instruments, and records relating to controlled substances income and expenditures of proceeds of drug transactions, and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of large sums of money made from engaging, in drug trafficking activities.

6.     Photographs of individuals associated with the distribution of drugs, and of their property and their drugs.

7. Records reflecting names, nicknames, addresses, and telephone numbers of both current and past drug associates.

8. Safes, keys for safety-deposit boxes, hidden compartments and other secure locations.

9. Documents concerning occupancy of the **Subject Premises**, such as monthly statements and rental agreements.

10. Firearms and ammunition.

11. Vehicles registered to or used by TERRANCE SANDERS.